April Monegas
Plaintiff in *Propria Persona*
2104 East Anderson Lane, Apt. 1513
Austin, Texas 78752
email: amonegas@gmail.com
phone number: 415-802-9276

**FILED**

AUG 10 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## San Francisco Division

Phillip Burton Federal Building & United States Courthouse; 450 Golden Gate Avenue; San Francisco, CA 94102

APRIL MONEGAS

PLAINTIFF,

v.

CITY AND COUNTY OF SAN FRANCISCO
DEPARTMENT OF PUBLIC HEALTH
DEFENDANT.

_____/

CV22-4633

CASE NO. _____

TSH

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, April Monegas ("plaintiff"), files this Complaint against defendant, CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH ("defendant") and states as follows:

## INTRODUCTION

1.    This is a claim by plaintiff April Monegas against her employer for violations of the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Amendments Act ("ADA-AA"), 42 U.S.C. § 12101, *et sequitur* for discrimination and retaliation on the basis of disability; for prohibited actions taken on the basis of this disability under the "regarded as"

- 1 -

*Complaint-- April Monegas*

prong and the "record of" prong; and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur*.

**2.**     Accordingly, plaintiff brings this action pursuant to the ADA and ADA-AA to recover all available relief in law, including but not limited to: (i) a judgment from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory damages in whatever amount she is found to be entitled; (iv) reinstatement, or in the alternative front pay in the event reinstatement is not practical; (v) an equal amount as liquidated damages, other monetary damages; (vi) an award of costs and reasonable court fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-judgment interest; and (ix) a jury trial on all issues so triable.

## JURISDICTION AND VENUE

**3.**     This court has original and exclusive jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §1331, in that the matters in controversy are brought pursuant to Title I of the Americans with Disabilities Act of 1990 and the ADA and ADA-AA of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

**4.**     Venue is proper in this judicial district under 28 U.S.C. §1391 because defendant does business in this judicial district and the acts complained of took place in this judicial district.

**5.**     Plaintiff timely filed a charge of Discrimination against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of February 18, 2022.

**6.**     On or about May 10, 2022, the EEOC via the Department of Justice issued plaintiff a Dismissal and Notice of Right to Sue against defendant with regards to this matter. A copy of the Right to Sue letter is attached as Exhibit A-11.

**7.**     Plaintiff has exhausted the administrative remedies available to her.

**8.**     Plaintiff files her complaint within 90 days of the EEOC's issuance of the notice of right to sue.

- 2 -

*Complaint*-- April Monegas

## PARTIES

**9.**     Plaintiff, April Monegas, resides in Austin, Texas at the address of 2104 East Anderson Lane and is a qualified individual with a disability within the meaning of the ADA and ADA-AA.

**10.**   Plaintiff was an employee of the defendant, which is a "covered entity" within the meaning of the ADA and ADA-AA.

**11.**   Defendant's principal place of business is located at 101 Grove Street, San Francisco, CA 94102.

**12.**   At all times material to this action, Plaintiff was an "employee" of defendant within the meaning of the ADA and ADA-AA.

**13.**   At all times relevant, defendant was an "employer" as defined by 42 U.S.C. 12111(5).

**14.**   From approximately July 10, 2017, until her termination on or about December 10, 2021, plaintiff was employed as a Senior Administrative Analyst.

**15.**   At all times material to this action, plaintiff was perceived as having a disability as defined by 42 U.S.C. §12102 (1) (2) and (3) and was subjected to adverse actions prohibited under this chapter because of perceived physical impairments whether or not these perceived impairments limited or were perceived to limit major life activities.

**16.**   Specifically, plaintiff was perceived as disabled with a contagious disease; was mis-classified as having an impaired immune system and an impaired respiratory system by defendant; and was not allowed to work because of defendant's discriminatory perceptions, policies and procedures.

**17.**   At all times material to this action, plaintiff was, and is, a "qualified individual" under the ADA and ADA-AA as a person who met the legitimate skill, experience, education, or other requirements of the employment position that plaintiff held, and who can/could perform the "essential functions" of the position plaintiff held with or without reasonable accommodation.

**18.**     Additionally, defendant is not eligible for any exemption under the ADA and ADA-AA, and, indeed, did not seek or obtain an exemption.

**19.**     At all times material to this action, defendant is/was an employer covered by the ADA and ADA-AA in that it employs more than 15 employees.

**20.**     At all times material to this action, plaintiff was an employee entitled to be free from discrimination on the basis of a perceived disability under the ADA and ADA-AA.

**PLAIN STATEMENT**

**21.**     Defendant's policies and procedures demonstrate that it discriminated against plaintiff based upon perceived disability.  When plaintiff objected, the defendant continued to impose accommodations; including but not limited to: medical examinations, medical interventions including mask-wearing; without first conducting an individualized assessment to determine if she was a direct threat.  Defendant used policies and procedures to harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and inquiries upon plaintiff.  Defendant also retaliated against plaintiff by interfering with her rights, imposing punitive measures including requiring non-job-related medical examinations and treatments, removing her from scheduled work-shifts, and ultimately terminating her employment, which is prohibited under the ADA and ADA-AA.

**STATEMENTS OF FACT**

**22.**     The Americans with Disabilities Act Amendments Act ("ADA and ADA-AA"), 42 U.S.C. § 12101, et. seq., as amended is a remedial statute aimed at addressing and providing remedy in response to Congress's findings that discrimination against individuals with physical or mental disabilities persist in critical areas like employment, and our nation's goals with respect to individuals with disabilities is to assure equality of opportunity and participation. 42 U.S.C. § 12101(a)(1)-(8). The ADA and ADA-AA is meant to protect qualified employees, like plaintiff, from discrimination, harassment and retaliation in the workplace on account of a real or perceived mental or physical disability.  42 U.S.C. § 12112.

*Complaint*-- April Monegas

**23.**    Plaintiff advised defendant that she was being regarded as disabled by the defendant and that the defendant was making a record of this disability by mis-classifying her as substantially limited with impaired immune and respiratory systems affecting her ability to perform major life activities in the workplace including working, communicating with others, performing manual tasks, talking, and breathing without the use of mitigation measures.

**24.**    Plaintiff on many occasions duly noticed defendant of her good faith opposition to discriminatory policies and procedures.

**25.**    Under the ADA and ADA-AA an employer may not require an individual with disability to accept accommodations which such qualified individual chooses not to accept. 29 CFR 1630.9 (d).  This is especially pertinent when accommodations are imposed for a perceived and unproven disability.

**26.**    Under the ADA and ADA-AA an employer is required to conduct an individual assessment to determine whether an employee poses a 'direct threat' before it can impose any measures upon the employee.  29 CFR §1630.2 (r)

**27.**    Under the ADA and ADA-AA it is considered discrimination on the basis of disability if the employer limits, segregates, or classifies an employee in a way that adversely affects such employee because of the disability.  42 USC § 12112

**28.**    Under the ADA and ADA-AA an employer who discharges, disciplines, or discriminates against an employee in the manner described in subsection (a) is considered to have violated 29 CFR §1630.4 (a)

**29.**    Under the ADA and ADA-AA employers are prohibited from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing. 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c) and shall be subject to the enforcement provisions relevant to such violations set forth in sections 42 U.S. Code § 12117,  42 U.S. Code § 12133 and 42 U.S. Code § 12188.

**30.**    Under the ADA and ADA-AA employers are prohibited from requiring medical examinations or making disability-related inquiries of employees unless such examination or

*Complaint*-- April Monegas

inquiry is shown to be job-related and consistent with business necessity; 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b).

**31.**   Under the ADA and ADA-AA, employers are prohibited from sharing non-job-related medical classification without any regard to confidentiality; 29 CFR §1630.14 (c).

**32.**   Plaintiff may proceed under the "regarded as" prong and the "record of" prong and this court has jurisdiction under these prongs of the ADA and ADA-AA.

## GENERAL ALLEGATIONS

**33.**   At all times material to this action, defendant failed to comply with its duty under the ADA and ADA-AA.

**34.**   Plaintiff notified defendant that she was a qualified individual with disability because she was being regarded as disabled with a contagious disease by the defendant's policies and procedures.

**35.**   Defendant's policies and procedures are specifically implemented for the purpose of mitigating the disability which it regards plaintiff as having.

**36.**   Defendant misclassified plaintiff as substantially limited and refused to allow plaintiff to perform several major life activities without using mitigation measures.

**37.**   When plaintiff chose not to accept the defendant's offered accommodations per 29 CFR 1630.9 (d), the defendant retaliated against plaintiff.

**38.**   Defendant was required to either provide equal access or claim exemption to the ADA and ADA-AA and it did neither; thus defendant failed to perform its duty under the ADA and ADA-AA.

**39.**   Defendant discriminated and retaliated against plaintiff for making a complaint that she was being regarded as disabled, thus asserting her entitlement to equal access under the ADA and ADA-AA.

*Complaint-- April Monegas*

**40.**    Plaintiff requested the defendant to provide a copy of the individualized assessment[1] that it conducted to determine that plaintiff was a direct threat; however, defendant ignored the requirement and continued to demand that plaintiff participate in its "health control measures" or accommodations such as mask-wearing, medical examinations, inquiries and treatments under Emergency Use Authorization ("EUA").

**41.**    Rather than providing equal access or proving any exemption to complying with the ADA and ADA-AA, defendant embarked on a series of adverse employment actions against plaintiff which were designed to deter plaintiff's good faith opposition to the policies and procedures.

**42.**    Defendant's policies and procedures segregated the plaintiff based on physical condition.

**43.**    Defendant's policies and procedures limited plaintiff's access to the workplace based on perceived disability.

**44.**    Defendant's policies and procedures refused allow plaintiff to perform his employment duties without using mitigation measures.

**45.**    Defendant's policy and procedures limited plaintiff's right to invoke ADA and ADA-AA protections by refusing to recognize that plaintiff could claim a reason under Federal law for refusing to comply with the policy and procedures.  Instead, defendant insisted that plaintiff could only claim a "medical" or "religious" exemption, which is interference with plaintiff's rights under the ADA and ADA-AA.

**46.**    Defendant also engaged in adverse employment actions when plaintiff claimed the right of informed consent and the right to refuse to take part in clinical trials and noticed defendant that all the imposed mitigation measures fall under an EUA period.

**47.**    Defendant's violation of the ADA and ADA-AA was not in good faith and was willful, and plaintiff sustained damages as a result of defendant's conduct including past and future

---

1 EEOC Technical Manual 2.2 (c)   "...the Supreme Court has stated and the Congress has reiterated, "society's myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairments."  The legislative history of the ADA indicates that Congress intended this part of the definition to protect people from a range of discriminatory actions based on "myths, fears and stereotypes" about disability, which occur even when a person does not have a substantially limiting impairment."

*Complaint-- April Monegas*

earnings, lost opportunities and benefits, liquidated damages, emotional distress, and reasonable attorneys' fees and or costs.

**48.**   Plaintiff re-alleges each statement from the affidavit herein.

<u>**COUNT I**</u>

<u>**DISCRIMINATION UNDER THE ADA and ADA-AA FOR PERCEIVED DISABILITY**</u>

**49.**   Plaintiff incorporates each of the above statements of fact herein; the allegations contained in the paragraphs 1 through 48 and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

**50.**   Title I of the ADA prohibits employment discrimination on the basis of disability in all aspects of employment, in 29 CFR § 1630 *et sequitur;* and particularly §1630.4; § 1630.5.

**51.**   Plaintiff is a qualified individual under the ADA and ADA-AA.

**52.**   Beginning April 30, 2021, and on-going, defendant began regarding plaintiff as having the disability of a contagious disease and made a record of such disability by mis-classifying plaintiff as being substantially limited with an impaired immune system and an impaired respiratory system; and began requiring plaintiff to use mitigation measures to perform several major life activities in the workplace, even though plaintiff worked remotely from her home in another state.

**53.**   Defendant failed to conduct an individualized assessment to determine whether plaintiff met the criteria of posing a direct threat, but it accused her of being a direct threat to the safety of others in an evaluation written by Aldrich David.  Defendant only based this determination on statements made on the CDC's website which does not qualify as an individualized assessment.

**54.**   Despite having written knowledge of plaintiff claiming protected status under the ADA and ADA-AA, defendant continued to limit, segregate, classify plaintiff due to its perception of plaintiff as a person with a disability within the meaning of the ADA and ADA-AA.

**55.**   Defendant's responses to the requests made by plaintiff to cease the discrimination and harassment were in fact non-responsive, dismissive or harassing; and constituted

*Complaint*-- April Monegas

multiple instances of adverse employment actions as the emails were all aimed at deterring the plaintiff from claiming her rights under the protection of the ADA rather than under the employer's preferred method of requesting an exemption that it routinely denied; a true and correct copy of each written communication is included with Exhibit A.

**56.**    Despite plaintiff's written notices claiming her position, defendant continued without cessation to harass the plaintiff based upon disability and to try to deter her by sending plaintiff numerous communications which were in themselves adverse employment actions that coerced plaintiff to accept various accommodations or suffer further adverse employment actions.  All written communications are attached as Exhibit A.

**57.**    Defendant has failed to ensure the plaintiff equal access to the premises where plaintiff was assigned to work; and the plaintiff has been prevented from enjoying equal access to the benefits of employment enjoyed by other employees.

**58.**    Defendant's "COVID-19 policies and procedures" classified plaintiff in such a way that plaintiff's employment opportunities were adversely affected and limited because defendant would not permit plaintiff to do her job without first submitting to defendant's accommodations ("mitigation measures")[2] despite the fact that the palintiff was working remotely in another state and did not come in contact with other DPH workers.

**59.**    Defendant required non-job-related medical examinations or made disability-related inquiries[3] of plaintiff that were not consistent with business necessity.  Defendant has also failed to provide any notice as to the manner in which these inquiries or medical examinations were an essential function of plaintiff's job; as plaintiff was performing all her job duties during this entire time.

**60.**    An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job[4] with or without reasonable accommodations.

---

2    Prohibited by 29 CFR § 1630.5

3    Prohibited by 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b)

4    29 CFR 1630.2(n)(2) definition "Essential Function": "(i) ....the reason the position exists is to perform that function."

*Complaint*-- April Monegas

**61.**   Defendant never conspicuously disclosed or gave legally adequate notice that complying with the COVID-19 mitigation measures ("accommodations") are an **essential function** of the job of Senior Administrative Analyst; and these measures have never previously been an essential function of plaintiff's job, and also did not mention plaintiff's right of refusal under EUA guidelines[5].

**62.**   Plaintiff claimed her right not to provide any medical information that is not related to the performance of her job duties and this reasonable opposition was intolerable to the defendant.

**63.**   Defendant also limited the accommodation measures[6], such as examinations; disclosures of medical records that were not job-related; experimental injections; medical interventions; equipment or products; to only those chosen by defendant. It refused to acknowledge that no mitigation measures needed to be applied because the plaintiff worked remotely from home in another state.   There was simply no credible basis to the DPH written determination that plaintiff was a "danger to co-workers" as Aldrich David  opined in his report.    Additionally, defendant failed to consider that no "accommodations" were necessary since plaintiff worked remotely, and she did not require injections, medical devices  or medical examinations.

**64.**   Defendant classified plaintiff as "unvaccinated"[7]; widely shared this classification of plaintiff with other employees without any regard to confidentiality[8]; and encouraged employees to harass plaintiff with repetitive emails, intimidating interactions and threats of termination, even when it was obvious that plaintiff could not be a health risk to San Francisco DPH even if she were actually diagnosed with ebola and tuberculosis combined.

**65.**   Plaintiff had previously made one request for religious exemption per the misguided advice of her employer, but plaintiff withdrew the request in writing shortly after receiving the boilerplate evaluation of Aldrich David which made apparent that "religious exemptions"

---

5 Title 21, Chapter 9 V, Part E §360bbb–3a. Emergency use of medical products.

6  29 CFR Part 1630.2(j)(5)(i)

7   Discrimination based upon physical condition

8   Prohibited by 29 CFR § 1630.13.

were a ruse by the employer to try and claim unsubstantiated exemptions to its duty under the ADA.

66.   Additionally, the experimental "vaccines" were being promoted as "safe vaccines" by DPH director Grant Colfax and in various DPH emails even when the "vaccine" makers never claimed the injections could actually prevent transmission or infection of any contagious disease, specifically regarding the "COVID-19" or "SarsCOV2" purported "diseases".

67.   The ADA and ADA-AA also protects individuals such as plaintiff for whom submitting to certain accommodation measures would create impairments. The accommodations DPH promoted included, but were not limited to, taking experimental injections while under Emergency Use Authorization (EUA) which are being promoted as "vaccines" but which are not legally vaccines; submitting to repetitive, non-job-related medical examinations (nasal tissue testing, temperature checks); being placed under isolation, segregation and quarantine without due process; using medical devices for mitigation measures[9] (masks); disclosing plaintiff's medical records and history for non-job-related matters and participating in clinical trials and epidemiological experiments as a condition of employment.

68.   Plaintiff requests that this court take judicial notice of Section 201(h) of the Food, Drug and Cosmetic Act and its Final Guidance titled, "Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff", published in September of 2017[10], in which the Food & Drug Administration **defines** wearing a mask for mitigation purposes as a medical device and the application of a medical device or contrivance.

69.   Plaintiff further requests judicial notice of the fact that the Food & Drug administration has never **approved** wearing such face masks, but only "authorized" them without any supporting medical or clinical data establishing any medical necessity or efficacy for wearing such contrivances.

---

9   Section 201(h) Food, Drug & Cosmetic Act

10   https://www.fda.gov/regulatory-information/search-fda-guidance-documents/classification-products-drugs-and-devices-and-additional-product-classification-issues

- 11 -

*Complaint*-- April Monegas

**70.**   Plaintiff requests that the court take judicial notice of the official mortality rates of the State of California and the United States for the years from 2017, 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of no verifiable "pandemic".

**71.**   Plaintiff has been damaged by defendant's violation of the ADA and ADA-AA and has suffered damages, which include past and future earnings, lost opportunities and benefits, and emotional distress.

**72.**   The conduct of defendant and its agents and employees proximately, directly, and foreseeably, injured plaintiff, including but not limited to, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

**73.**   The conduct of defendant was so willful and wanton and in such reckless disregard of the statutory rights of plaintiff so as to entitle her to an award of punitive damages against defendant, to deter it, and others, from such conduct in the future.

**74.**   As a result of defendant's actions plaintiff has experienced discrimination, harassment, segregation, isolation.

**75.**   Plaintiff is entitled to any and all relief permitted under the ADA and ADA-AA, 42 U.S.C. § 12117(a), including equitable relief.

**76.**   **WHEREFORE**, Plaintiff respectfully requests entry of:

a.      judgment in her favor and against defendant for violation of the anti-discrimination provisions of the ADA and ADA-AA;

b.      ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and

c.      ordering defendant to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

d.      judgment in plaintiff's favor and against defendant for actual and compensatory damages, including lost earnings, front pay, and/or all actual monetary losses suffered as a result of defendant's conduct;

e.      judgment in plaintiff's favor and against defendant for plaintiff's reasonable attorney fees, costs and litigation expenses;

f.      judgment in plaintiff's favor and against defendant for punitive damages; and

g.      an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

**77.**   Plaintiff demands a jury trial.

## COUNT II

## INTERFERENCE/RETALIATION UNDER THE ADA and ADA-AA

**78.**   The ADA and ADA-AA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing under the ADA, Title 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c).

**79.**   Plaintiff incorporates the above statements of fact and the allegations contained in the paragraphs 1 through 48 herein and plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

**80.**   Once plaintiff began to express her opposition to the policy, defendant began unceasingly to retaliate against plaintiff despite plaintiff's reasonable good faith belief that she was exercising protected opposition to discrimination and claiming rights protected under the ADA and ADA-AA.

**81.**   The plaintiff was threatened with suspension and termination because of her unvaccinated condition despite living and working in another state entirely, the DPH wanted to force compliance on her. Plaintiff has successfully stated a violation of the ADAt simply because she has been subjected to actions prohibited under the law because of perceived physical impairment.

- 13 -

*Complaint*-- April Monegas

**82.**    Defendant continued to threaten the plaintiff with suspension, dismissal, and termination even after plaintiff opposed the discrimination and claimed protected opposition status with her employer and with the EEOC.   Defendant was fully aware of a pending EEOC investigation and plaintiff's protected opposition status.

**83.**    Defendant coerced plaintiff to submit to the accommodation measures, medical interventions and examinations and other health control measures, even though defendant was duly advised by plaintiff that she was not subject to any health control measures by any court order, and that the defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon plaintiff. [11]

**84.**    Defendant threatened plaintiff with the termination of employment then terminated her employment because of a perceived disability and as a result of classifying plaintiff as "unvaccinated".

**85.**    Despite having knowledge of plaintiff claiming protected status under the ADA and ADA-AA, defendant terminated plaintiff's employment due to plaintiff's opposition to discriminatory policies and procedures.

**86.**    Defendant also failed to give notice of plaintiff's right to refuse defendant's accommodations under the ADA and ADA-AA[12],  and failed to advise plaintiff of her right to informed consent, thus interfering with the exercise of plaintiff's rights under the ADA and ADA-AA.

**87.**    As a result of defendant's intentional, willful and unlawful acts of retaliating against plaintiff by terminating plaintiff's employment; interfering with plaintiff's right to informed consent; and interfering with plaintiff's right to refuse defendant's accommodations under the ADA and ADA-AA, plaintiff has suffered injury and damages.

**88.**    The injury suffered by plaintiff is thereby concrete and particularized and it is actual and imminent.   The injury alleged in the complaint, including the pleading and exhibits, clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical.

---

11  See California Public Health Emergencies Bench Book

12 29 CFR Part 1630.9 (d) & (e)

*Complaint-- April Monegas*

The injury described therein is at least fairly traceable to the challenged action, conduct and policies of defendant.

89.    The harm (injury) already suffered by plaintiff includes, but is not limited to, having to choose between waiving rights to: medical privacy, informed consent, refusal to take part in clinical trials, and be free of discrimination and retaliation OR having plaintiff's employment terminated.    Once violated, these rights cannot be recovered.

90.    Defendant's policies and procedures demonstrate soundly and convincingly that it intends to inflict future harm against plaintiff based upon perceived disability; it fully intends to continue these policies and it fully intends to continue retaliating against plaintiff as alleged herein.

91.    As a result of defendant's actions the plaintiff has experienced deterrence, retaliation, coercion, interference, termination and disruption in plaintiff's career.

92.    Defendant's efforts were to terminate plaintiff, rather than to provide equal access, per defendant's duty, and were not objectively or subjectively in good faith, therefore plaintiff is entitled to liquidated damages or other monetary damages, including punitive damages to the extent available.

93.    **WHEREFORE**, Plaintiff respectfully requests entry of:

a.    ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

b.    take such affirmative steps as may be necessary to prevent the recurrence of any retaliation, coercion, interference and intimidation and to eliminate, to the extent practicable, the effects of such conduct.

c.    reinstatement, or, in the alternative, front pay in the event reinstatement is not practical;

d.    judgment in plaintiff's favor and against defendant for actual and compensatory damages, including lost earnings, front pay, and/or all actual monetary losses suffered as a result of defendant's conduct;

*Complaint*-- April Monegas

e.      judgment in plaintiff's favor and against defendant for plaintiff's reasonable court fees and litigation expenses;

f.      judgment in plaintiff's favor and against defendant for punitive damages; and

g.      assess a civil penalty against the defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and

h.      an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

**94.**    Plaintiff demands a jury trial.

DATED this 9th day of August 2022.

8/9/22

April Monegas, Plaintiff